UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
SUN LIFE AND HEALTH
INSURANCE COMPANY (U.S.),

          Plaintiff/Stakeholder,

-against-

KATHLEEN COLAVITO,
DOMENIC COLAVITO, and
TERESA MAMONE COLAVITO,

          Defendants/Claimants.
----------------------------------X

**SUPPLEMENTAL DECLARATION OF ATTORNEY JEFFREY A. HOERTER, IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, IN RESPONSE**

Docket No. 7:11-cv-5225 (KMK)

Judge Karas

JEFFREY A. HOERTER, an attorney duly admitted to practice law before the courts of the State of New York and the United States District Court for the Southern District of New York, affirms under penalty of perjury that:

1.    I am an Attorney at Law associated with Martin Law Group, P.C., and have been retained to represent the claimant Kathleen Colavito in the instant action. I submit this Supplemental Declaration in reply to allegations contained in the response[1] submitted by claimants Domenic Colavito and Teresa Mamone, and in further support of claimant Kathleen Colavito's motion for summary judgment, adjudging her to be the only rightful beneficiary of the within Sun Life and Health Insurance Company Policy and, thus, the rightful owner of the proceeds of that policy, which are presently on deposit with the Clerk of this Court.

---

[1] This reply is submitted primarily in response to the document entitled "Claimant Domenic Colavito and Teresa Mamone Colavito Response to Claimant Kathleen Colavito's Statement of Facts." The accompanying Memorandum of Law is submitted in reply to the Memorandum of Law submitted by Paul J. Goldstein, Esq., on behalf of claimants Domenic Colavito and Teresa Mamone.

1

2. I make this Supplemental Declaration on information and belief, the sources being an examination of the papers maintained by my office in connection with the above-captioned case and the records of this Court, all of which I believe to be true and accurate.

3. Claimants Domenic Colavito and Teresa Mamone, admit the truth and veracity of the allegations set forth in paragraphs 1, 3 through 14, inclusive, 16, 17, and a part of 18. In paragraph 2, the undersigned merely sets forth the basis of the allegations contained thereafter.

4. In their response, claimants Domenic Colavito and Teresa Mamone deny the allegation set forth in paragraph 15 of the Declaration of Jeffrey A. Hoerter in Support of the Motion for Summary Judgment (hereinafter "Hoerter Declaration"). This denial flies in the face of the plain fact of the existence of Exhibit 7 accompanying the Hoerter Declaration, and the additional asserted fact that Ms. Bajardi accepted the form and forwarded it is irrelevant to the present controversy.

5. Similarly, the denial, in part, of the allegation set forth in paragraph 18 of the Hoerter Declaration, is irrelevant to the matter asserted in paragraph 18. Paragraph 18 refers to the School Administrators Association life insurance policy. This policy is entirely separate and apart from the Sun Life policy. As Exhibit 8 specifically reflects, the School Administrators Association policy was issued by MetLife under group policy number 5050019. Thus, paragraph 18 refers to a completely different life insurance policy than the Sun Life policy presently before this Court.

6. Paragraph 19 of the Hoerter Declaration asserts that Matthew Colavito died intestate. The denial of this allegation is based upon the assertion that Matthew Colavito left an "oral will" in the form of a tape recording. In the first instance, an "oral will" is not recognized

as a "will" under New York law. Secondly, by its own terms the tape recording is simply a starting point, as it concludes with the words "[t]his is just a first run. I'm going to listen to it, play it back. We'll see where we get from there." Thirdly, the tape recording begins by setting forth the date as Sunday, October 17, (presumably) 2010. It further recounts that Matthew Colavito "intends" that his son, Domenic, is to receive "all of ... anything that comes up with life insurance, anything that comes up with accounts, Domenic's name is on it. Domenic, I want you to have it." Clearly, while this may have been an expression of what Matthew Colavito intended to do, at least on October 17, 2010, it is also clear that he did not effectuate his stated intent, as he had previously changed the beneficiary on his New York State and Local Retirement System death benefit and his School Administrators Association life insurance to Domenic Colavito and Teresa Mamone, in equal shares, by writings dated August 11, 2009, and December 18, 2009, respectively. See, Exhibits 7 and 8, appended to Hoerter Declaration. Thus, it is clear that Matthew Colavito did not take any steps to effectuate the "intent" expressed in the tape recording of October 17, 2010, despite the fact that, at least as far as the retirement death benefit and the School Administrators Association life insurance were concerned, he was obviously well aware of how to designate and change beneficiaries. Finally, Domenic Colavito should not now be heard to claim that Matthew Colavito did not die intestate because, as the Administrator of his father's estate Domenic stated under oath that he had made a diligent search and could not locate

as a "will" under New York law. Secondly, by its own terms the tape recording is simply a starting point, as it concludes with the words "[t]his is just a first run. I'm going to listen to it, play it back. We'll see where we get from there." Thirdly, the tape recording begins by setting forth the date as Sunday, October 17, (presumably) 2010. It further recounts that Matthew Colavito "intends" that his son, Domenic, is to receive "all of ... anything that comes up with life insurance, anything that comes up with accounts, Domenic's name is on it. Domenic, I want you to have it." Clearly, while this may have been an expression of what Matthew Colavito intended to do, at least on October 17, 2010, it is also clear that he did not effectuate his stated intent, as he had previously changed the beneficiary on his New York State and Local Retirement System death benefit and his School Administrators Association life insurance to Domenic Colavito and Teresa Mamone, in equal shares, by writings dated August 11, 2009, and December 18, 2009, respectively. See, Exhibits 7 and 8, appended to Hoerter Declaration. Thus, it is clear that Matthew Colavito did not take any steps to effectuate the "intent" expressed in the tape recording of October 17, 2010, despite the fact that, at least as far as the retirement death benefit and the School Administrators Association life insurance were concerned, he was obviously well aware of how to designate and change beneficiaries. Finally, Domenic Colavito should not now be heard to claim that Matthew Colavito did not die intestate because, as the Administrator of his father's estate Domenic stated under oath that he had made a diligent search and could not locate

a will.[2]/[3]

7.  Paragraph 20 of the Hoerter Declaration asserts that, at no time prior to his death did Matthew Colavito change the beneficiary designation on [his] employer provided life insurance policy underwritten by Sun Life and Health Insurance Company. In denying this allegation, claimants Domenic Colavito and Teresa Mamone allege that claimant is making a legal conclusion and not asserting a fact. To the contrary, the plain and essential fact of the present litigation is that there is no record either in the files of BOCES or Sun Life, of the submission of a change of beneficiary designation, other than the original form submitted on October 26, 2007, naming claimant Kathleen Colavito the beneficiary of the Sun Life policy. Indeed, were such a form in existence, this litigation would not be necessary.[4]/[5]

---

[2] Whether the tape recording and the circumstances under which it is alleged to have been discovered are sufficient to establish Matthew Colavito's "intent" as to the disposition of the proceeds of the Sun Life policy or whether the existence of the tape is sufficient to defeat Kathleen Colavito's summary judgment motion is addressed in the accompanying Memorandum of Law.

[3] It must also be noted that, because divorce proceedings had been commenced in New York Supreme Court, Dutchess County, in September, 2009, the "automatic orders" issued upon commencement [See, New York Domestic Relations Law § 236, Part B, (2) (b) (5) (effective September 1, 2009)] of a matrimonial action prevent any effort on the part of the litigants to effect any change in beneficial ownership of any marital property, specifically, life insurance policies. Thus, in addition to the foregoing, these automatic orders would prevent any attempt by Matthew Colavito to change beneficiaries on any life insurance or death benefit attempted after that date.

[4] Whether other facts and circumstances are sufficient to establish a change of beneficiary is the ultimate question to be determined by this Court. However, the fact that there is no record of a change of beneficiary on file with either BOCES or Sun Life leads to the inescapable conclusion that, as asserted in paragraph 20, no such change took place.

[5] In addition, Matthew Carr, stated specifically that, after Matthew Colavito's death, he inquired of Mr. Wang whether there was a change of beneficiary form on file for the Sun Life policy and Mr. Wang told him that there was not such a form on file. See, Matthew Carr

4

8. The "Additional Material Facts" asserted by claimants Domenic Colavito and Teresa Mamone, set forth in paragraphs 21 through 28, are utterly irrelevant to the issue sub judice, of whether Matthew Colavito changed or intended to change the beneficiary of his Sun Life insurance policy in a manner consistent with the requirements of the insurance contract or New York State law. Although these allegations might give the reader some perspective on the domestic situation in the two and one-half years prior to Matthew Colavito's death (i.e., from August, 2008, the date Kathleen was "removed" from the marital residence, to January 5, 2011, the date of Matthew Colavito's death), they shed little, if any, light upon the reasons that Matthew Colavito did not change the designated beneficiary on the Sun Life policy. To the contrary, inasmuch as Matthew Colavito elected to, and was able to, file a change of beneficiary with respect to his New York State retirement system death benefit (on August 11, 2009) and his School Administrators Association life insurance policy (on December 18, 2009), the fact that no change was filed with respect to the Sun Life policy leads only to the conclusion that he made a conscious decision not to do so. Indeed, considering the additional fact that Matthew Colavito had only been hired on October 26, 2007, and had then been made aware of the two different enrollment and beneficiary designation forms required for the retirement system and the BOCES provided Sun Life policy, respectively, that he somehow did not know or could not know how to go about changing the beneficiary designation on the Sun Life policy, or that he somehow believed that, by changing the beneficiary designation on one he was effecting a change with respect to the other.

9. Paragraphs 29 through 35 accurately recount the testimony of Peter Wang, the

---

Deposition, pp. 32-33.

Benefits Administrator at BOCES. Of particular relevance to the issues before this Court are the following facts:

      A). The Sun Life policy was offered by BOCES as a benefit to certain new hires, including Matthew Colavito;

      B). Union Benefits, such as the School Administrators Association life insurance, were not handled by Mr. Wang, the BOCES benefits administrator; and,

      C). New York State and Local Retirement System membership (and the included benefits, such as the death benefit) are processed through a different office and are not administered by BOCES.

10. The assertion set forth in paragraph 36, that "[t]here were no change of beneficiary forms for the Sun Life policy available for employees of BOCES[,]" that "[n]o such form existed in 2007, when Matt Colavito was changing beneficiaries for all his benefits," is simply incorrect. As Mr. Wang succinctly stated in his deposition testimony, in order to change the beneficiary on the Sun Life policy, the Genworth Financial enrollment form was to be used. See, Deposition of Peter Wang, Exhibit C, pp. 36-45.[6]

11. The remaining assertions, set forth in paragraphs 37 through 44, appear to accurately reflect the testimony given at deposition by the respective witnesses. Response is required only to several of these.

---

[6] Insofar as it may be asserted that there was no specifically labeled "change of beneficiary" form available in connection with the Sun Life policy, that is correct. However, as noted above, the form and method for changing the Sun Life policy was available from Mr. Wang, and was set forth in the policy provisions.

6

12. In paragraph 39, claimants Dominic Colavito and Teresa Mamone assert that Matthew Carr testified that "[Matthew] Colavito wanted all of his benefits to go to his son, Domenic." However, review of the transcript of the deposition testimony reveals that Mr. Carr stated only that he surmised such, based on his conversations with Matthew Colavito. When asked what, in sum and substance, Matthew Colavito said to indicate this, Mr. Carr stated "[t]hat he loves his son. He never said yes I want my son to get all my life insurance. We didn't talk about death, Matt's passing, or anything like that. He always remained positive. I just know through our conversations he loved his son more than anything." Deposition of Matthew Carr, pp. 31-32.

13. In paragraph 42, it is correctly alleged that Kathleen Colavito did not attend Matthew Colavito's funeral. In the first instance, this allegation is irrelevant to the issue before this Court, i.e., whether Matthew Colavito effected a change of beneficiary of his Sun Life insurance policy. In the second instance, Mr. Carr is uniquely unsuited to describe the reasons for Kathleen Colavito's non-attendance, which are both irrelevant and well known to Teresa Mamone.

14. In light of the fact that, insofar as the issue presently before this Court is concerned, to wit, whether Matthew Colavito effected a change of beneficiary on his Sun Life policy, there are no disputed issues of material fact, summary judgment should be granted in favor of claimant Kathleen Colavito.

15. For the reasons more fully set forth in the accompanying Memorandum of Law, it remains clear that claimant Kathleen Colavito, as the named beneficiary of the Sun Life Policy, is the only rightful beneficiary of the within Sun Life and Health Insurance Company Policy and,

thus, the rightful owner of the proceeds of that policy, which are presently on deposit with the Clerk of this Court.

WHEREFORE, on the basis of the foregoing, and for the reasons more fully set forth in the accompanying Memorandum of Law, claimant Kathleen Colavito respectfully requests that an order be entered granting summary judgment in her favor, declaring her to be the rightful beneficiary and owner of the proceeds of the within Sun Life and Health Insurance Policy, and directing the Clerk of this Court to pay over to claimant Kathleen Colavito, the proceeds of said policy, which have been deposited with the Clerk of this Court, and along with such other and further relief as this Court deems appropriate under the circumstances.

Dated: Wappingers Falls, New York
       May 23, 2013

                  MARTIN LAW GROUP, P.C.
                  Attorneys at Law
                  2644 East Main Street
                  Wappingers Falls, New York 12590
                  (845) 440-8594
                  Attorneys for Defendant/Claimant Kathleen Colavito

By: _____
     JEFFREY A. HOERTER, ESQ. (JH2351)
     –Of Counsel–