UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUN LIFE AND HEALTH INSURANCE
COMPANY (U.S.),

                            Plaintiff,

    -v-

KATHLEEN COLAVITO,
DOMENIC COLAVITO, and
TERESA MAMONE COLAVITO,

                       Defendants.

11-CV-5225 (KMK)

OPINION & ORDER

Appearances:

Jeffrey Alan Hoerter, Esq.
Martin Law Group, P.C.
Wappingers Falls, NY
*Counsel for Defendant Kathleen Colavito*

Paul Joseph Goldstein, Esq.
Goldstein & Metzger, LLP
Poughkeepsie, NY
*Counsel for Defendants Domenic Colavito and Teresa Mamone Colavito*

KENNETH M. KARAS, District Judge:

        Sun Life and Health Insurance Company (U.S.) ("Sun Life") brought this Interpleader

Complaint against Kathleen Colavito, Domenic Colavito, and Teresa Mamone Colavito, to

determine the proper distribution of benefits from a life-insurance policy held by Matthew

Colavito.  (*See* Am. Compl. (Dkt. No. 3).)  In their Answer, Claimants Domenic Colavito and

Teresa Mamone Colavito ("Nonmovants") sought a judgment declaring themselves, collectively,

to be the sole beneficiaries of the policy.  (*See* Answer to First Am. Interpleader Compl. & Req.

for Declaratory J. 5 (Dkt. No. 6).)  In her Answer, Claimant Kathleen Colavito ("Movant" or

"Kathleen") sought a judgment declaring her to be the sole beneficiary.  (*See* Answer to First Am. Interpleader Compl. & Req. for Declaratory J. 5 (Dkt. No. 8).)

Before the Court is Kathleen Colavito's Motion for Summary Judgment, wherein she seeks a judgment "declaring that she is the rightful beneficiary/owner of the proceeds" of the policy.  (Notice of Mot. for Summ. J. ("Mot.") 1 (Dkt. No. 24).)  For the reasons stated below, the Court grants the Motion.

## I.  Background

### A.  Factual History

For the purposes of evaluating this Motion, the following facts are not in dispute. Matthew Colavito ("Matthew") and Teresa Mamone Colavito ("Teresa") were married in September 1986 and had a son, Domenic Colavito ("Domenic"), in September 1988.  (*See* Decl. of Att'y Jeffrey A. Hoerter, in Supp. of Mot. for Summ. J. ("Mot. Decl.") at ¶¶ 3–4 (Dkt. No. 25).)  In December 1988, Matthew and Teresa entered into a separation agreement, and in September 1991, they entered into a settlement agreement ("Settlement Agreement"), which was later incorporated into a judgment of divorce.  (*See id.* ¶¶ 5–6; *id.* Ex. 1 (Settlement Agreement).)  In August 2000, Matthew married Kathleen.  (*See id.* ¶ 7.)

Approximately seven years later, in October 2007, Matthew accepted a position as a Working Supervisor of Facilities at the Dutchess County Board of Cooperative Educational Services ("BOCES").  (*See id.* ¶ 8.)  Thereafter, Matthew enrolled in a number of benefits programs associated with his new position.  In particular, on October 22, 2007, Matthew completed and signed RS Form 5420-I, which enrolled Matthew in a death-benefits program provided by the New York State and Local Retirement System ("NYSLRS").  (*See id.* ¶ 10.)  In doing so, he designated Kathleen as the sole primary beneficiary and Domenic as the sole

contingent beneficiary.  (*See id.* Ex. 4 (NYSLRS Membership Registration Form).)

Furthermore, on October 26, 2007, Matthew completed and signed a form entitled "Genworth

Financial Enrollment Request," wherein he elected to enroll in a life-insurance policy and

designated Kathleen as the sole primary beneficiary and Domenic as the sole contingent

beneficiary.  (*See id.* ¶ 12; *id.* Ex. 6 (Genworth Financial Enrollment Request).)  The Parties do

not dispute that this enrollment request resulted in Matthew's enrollment in the life-insurance

policy at issue in this Interpleader Action, brought by Sun Life.[1]  Finally, around the same time,

Matthew also enrolled in a life-insurance policy provided by the School Administrator's

Association of New York State ("School Administrators Association").  (*See id.* ¶ 17.)[2]

_____

[1] Although the Parties do not specifically address the relationship between Genworth
Financial and Sun Life, the Court notes, for clarity's sake, that Sun Life's parent company, Sun
Life Financial, acquired Genworth Financial in May 2007.  *See* Press Release, Sun Life
Financial, Sun Life Financial Completes Acquisition of Genworth Employee Benefits Group
(May 31, 2007), *available at* http://cdn.sunlife.com/global/v/index.jsp?vgnextoid=afd6dfe9ff
8b7210VgnVCM1000003f80d09fRCRD.

[2] Both Parties agree that Matthew enrolled in this policy, although neither Party has
produced the enrollment documentation, which would presumably indicate the date of
enrollment and the original beneficiaries.  This information, however, is not necessary to decide
the present Motion, which concerns only the policy provided by Sun Life.
        Furthermore, the Court notes that the Parties' apparent disagreement over this issue in
their competing Declarations is not, in fact, a dispute.  In his original Declaration, counsel for
Movant alleges that Matthew was required to join the School Administrators Association union
"upon commencing his employment" at BOCES, and that the policy "*at issue here* was provided
as a benefit by the union to its members."  (Mot. Decl. ¶ 18 (emphasis added).)  Nonmovants
respond that "[t]he insurance policy *at issue here* was provided as a benefit to administrative
employees by BOCES."  (Claimants Domenic Colavito & Teresa Mamone Colavito Resp. to
Claimant Kathleen Colavito's Statement of Facts ("Opp. Decl.") ¶ 18 (Dkt. No. 28) (emphasis
added).)  However, counsel for Movant then clarified that when specifying the policy "at issue
here" in his Declaration, he meant, not the Sun Life policy at issue in the present Action (which
Movant implicitly concedes was provided by BOCES), but instead "the School Administrators
Association life insurance policy" he discussed in paragraph 18 of his original Declaration,
which policy he alleges is "entirely separate and apart from the Sun Life policy."  (Supp. Decl.
of Att'y Jeffrey A. Hoerter, in Supp. of Mot. for Summ. J., in Resp. ("Supp. Decl.") ¶ 5 (Dkt.
No. 33).)  Thus, both Parties agree that the Sun Life policy, which is at issue in the present

Two years later, in September 2009, Kathleen instituted divorce proceedings against Matthew. (*See id.* ¶ 14.) Approximately one month earlier, on August 11, 2009, Matthew executed a form entitled "[']Designation of Beneficiary with Contingent Beneficiaries['] to the [NYSLRS]." (*See id.* ¶ 15; *id.* Ex. 7 (NYSLRS Designation of Beneficiary With Contingent Beneficiaries Form).) Although the Parties offer slightly different characterizations of this event, they both agree that "[b]y filing [this] form," Matthew "effected a change of his designated primary beneficiaries of his [NYSLRS] death benefit, from [Kathleen] to [Domenic] and [Teresa]."[3] (*Id.* ¶ 16; *see also* Claimants Domenic Colavito & Teresa Mamone Colavito Resp. to Claimant Kathleen Colavito's Statement of Facts ("Opp. Decl.") ¶ 16 (Dkt. No. 28) (admitting the facts as stated in Movant's declaration).)

Furthermore, on December 18, 2009, Matthew executed a form entitled "Insurance Beneficiary Designation" and submitted it to the School Administrators Association, in which form Matthew designated Domenic and Teresa both as primary beneficiaries of the life-insurance policy provided by that organization. (*See* Mot. Decl. ¶ 17; *id.* Ex. 8 (Insurance Beneficiary Designation form).)

---

Action, was provided by BOCES, and that the School Administrators Association policy, which was "at issue" in paragraph 18 of Movant's Declaration, is a completely separate policy.

[3] Movant alleges that Matthew "executed and submitted to the [NYSLRS] a form RS-5127-I entitled Designation of Beneficiary with Contingent Beneficiaries to the [NYSLRS]." (Mot. Decl. ¶ 15.) Nonmovants allege that, "in the presence of Susan Bajardi, personnel assistant at BOCES, [Matthew] signed the form . . . naming [Domenic] and [Teresa] as the primary beneficiaries. Ms. Bajardi accepted the designation, put a copy in [Matthew's] personnel file, and presumably mailed a copy to the State Comptroller." (Opp. Decl. ¶ 15 (citations omitted).) Movant argues, however, that "the additional asserted fact that Ms. Bajardi accepted the form and forwarded it is irrelevant to the present controversy." (Supp. Decl. ¶ 4.) The dispute is, in fact, not material to the instant Motion.

4

Before his divorce proceedings with Kathleen were resolved, Matthew died on January 5, 2011.  (*See* Mem. of Law ("Mot. Mem.") at 4 (Dkt. No. 26); Mem. of Law ("Opp.") at 1 (Dkt. No. 27).)  Subsequently, Kathleen, Domenic, and Teresa all filed separate claims for the proceeds due from the Sun Life policy.  (*See* Am. Compl. ¶¶ 13–15.)

B.  Procedural History

Sun Life filed its first Interpleader Complaint on July 27, 2011, (*see* Dkt. No. 1), and then filed an Amended Complaint on August 4, 2011, (*see* First Am. Interpleader Compl. & Req. for Declaratory J. ("Interpleader Compl.") (Dkt. No. 3)).  On September 19, 2011, Nonmovants filed an Answer, in which they sought a judgment declaring them "the true and lawful beneficiaries of the Sun Life insurance proceeds."  (Answer to First Am. Interpleader Compl. & Req. for Declaratory J. at 5 (Dkt. No. 6).)  In her Answer, filed September 20, 2011, Kathleen sought a judgment declaring her "the only proper lawful claimant under the terms of the policy." (Answer to First Am. Interpleader Compl. & Req. for Declaratory J. at 5 (Dkt. No. 8).)

On January 4, 2012, pursuant to a "Stipulation of Dismissal" signed by the Parties, Sun Life agreed, *inter alia*, to deposit $100,000 (the total amount of the policy) into the registry of the Court.  (*See* Dkt. No. 11 (Stipulation of Dismissal with Prejudice as to Pl. Sun Life & Health Ins. Co. (U.S.) Only).)  The Court subsequently dismissed Sun Life from the litigation with prejudice.  (*See id.*)  Nonmovants then filed two amended answers to the Amended Complaint. The first, filed on July 27, 2012, (*see* Am. Answer to First Am. Interpleader Compl. & Req. for Declaratory J. (Dkt. No. 19)), was timely filed pursuant to the Court's Scheduling Order giving the Parties until July 27, 2012, to amend their pleadings.  (*See* Dkt. No. 18.)  The second, filed on August 7, 2012, (*see* Second Am. Answer to First Am. Interpleader Compl. & Req. for Declaratory J. ("Second Amended Answer") (Dkt. No. 20)), was properly filed pursuant to

Federal Rule of Civil Procedure 15, which allows a party to "amend its pleading once as a matter of course within . . . 21 days after serving it." Fed. R. Civ. P. 15(a)(1)(A).

In their Second Amended Answer, Nonmovants pled their declaratory-judgment claim in substantially the same fashion as they did in their original Answer. (*See* Second Amended Answer at 4–5, 7). In addition, Nonmovants included a cross-claim against Movant, asking the Court to impose a constructive trust on the entirety of the Sun Life proceeds based on Matthew's alleged continuing obligations to pay child support and maintain a life-insurance policy under the terms of his Separation Agreement with Teresa. (*See id.* at 5–7.)

Kathleen filed her Motion for Summary Judgment on April 11, 2013, seeking an Order "declaring that she is the rightful beneficiary/owner of the proceeds" of the Sun Life policy, (*see* Mot. at 1), and asking the Court for a judgment in her favor on the constructive-trust issue, (*see* Mot. Mem. at 11–12). Nonmovants filed a response on May 3, 2013, (*see* Opp.), and Kathleen filed a reply on May 24, 2013, (*see* Supplemental Mem. of Law ("Supp. Mem.") (Dkt. No. 34).

## II.  Discussion

### A.  Standard of Review

Summary judgment shall be granted where it is shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (same). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003).

A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.  In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citations omitted). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).  "A fact is material when it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted).  At summary judgment, a court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial.  *See Westinghouse Electric Corp. v. N.Y.C. Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y.1990). Ultimately, a court's goal should be "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323–24.

B.  Analysis

1.  Jurisdiction

"[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press."  *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011); *see also Ametex Fabrics, Inc. v. Just In Materials, Inc.*, 140 F.3d 101,

105 (2d Cir. 1998) ("[W]e have the duty to determine *sua sponte* whether subject matter jurisdiction exists.").  Originally, Sun Life brought its Interpleader Complaint under Federal Rule of Civil Procedure 22, which provides that "[p]ersons with claims that may expose a plaintiff to double or multiple liability may be joined as defendants and required to interplead." Fed. R. Civ. P. 22(a)(1).  It is true that Rule 22 "does not provide an independent basis for jurisdiction."  *Correspondent Servs. Corp. v. First Equities Corp. of Fla.*, 338 F.3d 119, 124 (2d Cir. 2003).  But where Sun Life (a Massachusetts corporation, (*see* Am. Compl. ¶ 3)) is diverse from every claimant (each of whom resides in New York, (*see id.* ¶¶ 5–7)), and where the amount in dispute is $100,000, (*see id.* ¶ 17), there is no question that the Court has diversity jurisdiction over the Interpleader Complaint.  *See* 28 U.S.C. § 1332; *Franceskin v. Credit Suisse*, 214 F.3d 253, 259 (2d Cir. 2000) ("[A] federal court has diversity jurisdiction over an interpleader action brought pursuant to the Rule so long as the stakeholder . . . is diverse from every claimant.").  And although the Court's dismissal of Sun Life rendered the remaining parties non-diverse, the Court retains jurisdiction over the Interpleader Complaint because "diversity of citizenship is assessed at the time the action is filed," and "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K.N. Energy, Inc.*, 498 U.S. 426, 428 (1991); *see also Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 62 (2d Cir. 1999) ("Federal diversity jurisdiction is not lost by post-filing events that change or disturb the state of affairs on which diversity was properly laid at the outset."); *Republic of China v. Am. Express Co.*, 195 F.2d 230, 234 (2d Cir. 1952) (exercising jurisdiction over "separate and distinct" interpleader claims after dismissal of party necessary to diversity jurisdiction because "[t]he subsequent litigation [was] ancillary to the original suit and the initial jurisdiction of that [was] sufficient").

8

The Court still must assess, however, whether it has jurisdiction over the Nonmovants' counterclaim and cross-claim.  Rule 13, like Rule 22, does not provide an independent basis for subject matter jurisdiction.  *See Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 213–14 (2d Cir. 2004) (analyzing "whether supplemental jurisdiction [was] available for [the defendant's] counterclaims"); *Prudential Equity Grp., LLC v. Ajamie*, 524 F. Supp. 2d 473, 475 (S.D.N.Y. 2007) ("[P]ermission to join a claim [under Rule 13(g)] does not of itself create federal jurisdiction over that claim."); 9 Charles Alan Wright et al., Federal Practice and Procedure § 2365 (3d ed. 2013) ("If the counterclaim is permissive, it ordinarily will require independent grounds of subject matter jurisdiction in order to remain pending." (footnotes omitted)).  In this context, the Court may have jurisdiction over a counterclaim or cross-claim pursuant to 28 U.S.C. § 1367(a), which establishes supplemental jurisdiction to hear "claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a). Under this provision, a counterclaim or cross-claim "forms part of the same controversy if it and the federal claim derive from a common nucleus of operative fact."  *Briarpatch Ltd. v. Phx. Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (noting that "[t]his is so even if the . . . claim is asserted against a party different from the one named in the federal claim").

Here, in their answer to the Interpleader Complaint—which raised a claim based on Sun Life's allegation that it was "unable to determine the proper beneficiary under the [life-insurance] policy," (Am. Compl. ¶ 23)—Nonmovants raised a counterclaim seeking a declaratory judgment that they are entitled to the proceeds of the Sun Life policy, (*see* Second

Amended Answer ¶¶ 27–32).[4]  Because Nonmovants' counterclaim requires the Court to resolve the very issue presented in the Interpleader Complaint, the Court has no trouble finding that the original claim and the counterclaim "stem from the same common nucleus of operative fact" such that they "form part of the same case or controversy."  *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011) (internal quotation marks omitted); *see also* 7 Charles Alan Wright et al., Federal Practice and Procedure § 1715 (3d ed. 2013) ("Certainly when the stakeholder is an interested party and when one of the claimants asserts that the stakeholder is independently liable to him, the interposition of a counterclaim is appropriate. Indeed, in most instances of this type, the counterclaim will be compulsory and the court will exercise supplemental jurisdiction over it . . . ." (footnotes omitted)).

Nonmovants also raised a cross-claim against Movant, claiming that "[t]o the extent that Kathleen . . . is a beneficiary of the Sun Life Policy, she has been unjustly enriched, and the proceeds should be subjected to a constructive trust."  (Second Amended Answer ¶ 45.) Nonmovants base their argument on the Settlement Agreement between Matthew and Teresa, which agreement they allege "obligated [Matthew] to have in existence a policy of life insurance, in the sum of $100,000.00, with Domenic . . . named as beneficiary, and Teresa . . . trustee thereof."  (*Id.* ¶ 41.)  Given this alleged obligation, Nonmovants claim that they "have a superior equitable interest in the proceeds of the Sun Life Policy," and that this interest entitles them to the proceeds of the policy notwithstanding the disposition of the counterclaim.  (*Id.* ¶¶ 46–47.)

---

[4] The Court need not address whether this counterclaim is permissive or compulsory.  *See* Fed. R. Civ. P. 13(a)–(b) (providing that a pleading may state either a compulsory counterclaim or "any claim that is not compulsory").

10

It is questionable whether the Court has supplemental jurisdiction to consider Nonmovants' cross-claim. Tellingly, the factual allegations underlying the claim focus entirely on the Separation Agreement between Matthew and Teresa, such that the cross-claim does not address the sole issue raised in the Interpleader Complaint—i.e., who is the beneficiary of the proceeds of the policy. (*See* Second Amended Answer ¶¶ 34–48.) And, conceptually, whether a party is allowed to keep the proceeds from a life-insurance policy is a question separate from whether that party is entitled to the proceeds in the first place. Therefore, the cross-claim arguably does not share a common nucleus of operative fact with the original claim. *See Cherokee Ins. Co. v. Koenenn*, 536 F.2d 585, 588 (5th Cir. 1976) (finding, in the context of an interpleader action to determine the beneficiary of insurance proceeds, no "common nucleus of operative fact" and thus no supplemental jurisdiction over a cross-claim where "[t]he facts which might support [the cross-claim] at best would relate only tangentially to the facts underlying the interpleader question of . . . the proper distribution of the insurance funds"); *Union Sec. Ins. Co. v. Alexander*, No. 11-CV-10858, 2011 WL 5199918, at *9 n.2 (E.D. Mich. Nov. 2, 2011) ("This interpleader case . . . centers on the narrow issue of who is entitled to the proceeds of a specific life insurance policy. Distribution of the marital estate between the decedent and his spouse far exceeds the particular claim which gives this Court original jurisdiction over the case."); *cf. Degree of Honor Protective Ass'n v. Charles T. Bisch & Son, Inc.*, 194 F. Supp. 614, 614 (D. Mass. 1961) (finding Rule 13(g) requirements not satisfied where cross-claim of entitlement to life-insurance proceeds "arose out of a separate agreement"). But the Court finds it unnecessary to decide this issue, because even if it undoubtedly had supplemental jurisdiction, it would decline to exercise it and dismiss the claim. *See Briarpatch Ltd.*, 373 F.3d at 308 ("The fact that the district court has the power to hear . . . supplemental claims does not mean . . . that it must do

11

so.  Instead, it may decline to exercise its power based on the factors laid out in 28 U.S.C.

§ 1367(c).  This decision is left to the exercise of the district court's discretion."); *see also* 28

U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over

a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction

. . . .").[5]

### 2.  Declaratory-Judgment Counterclaim

Nonmovants seek a judgment "[d]eclaring [themselves to be] the true and lawful

beneficiaries of the Sun Life insurance policy proceeds in the amount of $100,000."  (Second

Amended Answer at 7.)  In her Motion, Movant seeks a declaration "that she is the rightful

beneficiary/owner of the proceeds" of the policy, (*see* Mot. at 1), and seeks "an order and

judgment . . . directing that the proceeds of the Sun Life Policy . . . be paid over and delivered"

to her, (*see* Mot. Mem. at 9).  Taking the disputed facts in the light most favorable to

Nonmovants, the Court must decide whether Nonmovants have met their burden to identify

---

[5] The Court notes, but does not hold, that an attempt to bring this claim in New York state court might not be barred by the applicable statute of limitations.  "A cause of action for a constructive trust is governed by the six-year statute of limitations provided by [N.Y. C.P.L.R. § 213(1)]."  *Tornheim v. Tornheim*, 888 N.Y.S.2d 603, 605 (App. Div. 2009).  Moreover, in a case like this one, where a party seeks to impose a constructive trust on the proceeds of a life-insurance policy held by an allegedly wrongful beneficiary and based on a promise contained in a separation agreement, "[t]he cause of action accrues when the property in dispute is held adversely to the [allegedly proper] beneficiary's rights"—i.e., when the constructive trustee's rights to the proceeds vest.  *Augustine v. Szwed*, 432 N.Y.S.2d 962, 965 (App. Div. 1980) ("In this case, decedent may have breached the separation agreement in 1968 but there were no insurance proceeds held then and no property rightfully belonging to plaintiff was adversely possessed by anyone until after his death [in 1975].  The date when [decedent] died was the date when defendant's inchoate rights as beneficiary of the policies vested and when the property was held adversely to plaintiff.  That was the date when plaintiff's cause of action to impose a constructive trust arose . . . .").

"admissible evidence sufficient to raise a genuine issue of fact for trial." *Jaramillo*, 536 F.3d at 145.

As discussed, the Parties agree that Matthew enrolled in the Sun Life policy in October 2007. (*See* Mot. Decl. ¶ 12; *id.* Ex. 6 (Genworth Financial Enrollment Request).) They also agree that, when he enrolled in the policy, he made Kathleen the sole primary beneficiary and Domenic the sole contingent beneficiary. (*Id.* ¶ 12.) Furthermore, Nonmovants do not dispute that, pursuant to the terms of the policy, if Kathleen was the primary beneficiary of the policy at the time of Matthew's death, she is entitled to the entirety of the policy proceeds. (*See id.* Ex. 6 (Genworth Financial Enrollment Request, providing that the enrollee "designate[s] the beneficiar[ies] shown above to receive all sums which may become due on account of my death under this group coverage," and that the "proceeds will be payable in equal shares to those primary beneficiaries who survive me but if no primary beneficiary survives such proceeds will instead be payable in equal shares to those contingent beneficiaries who survive me"); Am. Compl. Ex. B, at unnumbered 29 (Sun Life policy terms, providing that "[s]uch benefit will be paid to the beneficiary or in equal shares to the beneficiaries living at your death. Payment will be made in accordance with the beneficiary designation you have most recently placed on file in the manner described above. Payments will be made in the following order of priority: (a) to your primary beneficiaries; or (b) to your contingent beneficiaries, if any, provided no primary beneficiary is living at your death.").) Thus, the primary question presented in the Motion is whether Matthew effected a change of beneficiary before he died.

"As a general rule, under . . . New York law, the method prescribed by the insurance contract must be followed in order to effect a change of beneficiary." *McCarthy v. Aetna Life*

*Ins. Co.*, 704 N.E.2d 557, 560 (N.Y. 1998).[6]  Matthew's signed enrollment form provides that the enrollee "may designate a new beneficiary at any time, subject to the conditions and provisions of the Group Policy."  (*See* Mot. Decl. Ex. 6 (Genworth Financial Enrollment Request, provision below item 23 in the "Beneficiary Designation" section).)  Nonmovants acknowledge that Matthew received notice of these conditions and provisions in an informational booklet Sun Life provided to BOCES, which booklet BOCES provided to Matthew as a newly hired employee.  (*See* Opp. Decl. ¶ 43.)  In the booklet, a section entitled "How To Change the Beneficiary" provides, in full:

> You may change the beneficiary by written notice to us signed by you.  You may file it at either:
>
> 1.  Our Home Office;
> 2.  The office of the Policyholder; or
> 3.  The home office of your Employer.
>
> Whether or not you are living on the date the notice is received, the change will take effect as of the date it was signed by you.  However, the change will be without prejudice to us on account of any payments made by us before we received the notice.

(*Id.* Ex. E, at unnumbered 3.)  This language matches exactly the language of what Sun Life claims is an accurate copy of Matthew's actual policy.  (*See* Am. Compl. ¶ 9; *id.* Ex. B, at unnumbered 30.)  Thus, pursuant to the policy, a change-of-beneficiary request is effectual only if it is (1) written; (2) signed; and (3) filed at any of the specified locations.

---

[6] Movant correctly notes that "[t]he parties appear to be in agreement that New York substantive law controls the issues in the instant proceeding," (Supp. Mem. at 10), and "such implied consent . . . is sufficient to establish choice of law."  *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 61 (2d Cir. 2004) (internal quotation marks omitted) (alteration in original).  Thus, the Court applies New York law throughout its analysis.

14

Nonmovants allege that Matthew complied with the policy by "signing the only forms available to him, including one entitled, 'Designation of Beneficiary', [sic] and filing it with the home office of his employer, and mailing another form changing his insurance beneficiary designation." (Opp. at 2.) In making this claim, Nonmovants specifically refer to a change-of-beneficiary form for Matthew's NYSLRS death-benefits policy, (*see* Mot. Decl. Ex. 7), and a change-of-beneficiary form for Matthew's School Administrators Association life-insurance policy, (*see id.* Ex. 8). These forms, however, specifically gave written notice to NYSLRS and to the School Administrators Association, respectively, about beneficiary changes for two different policies, neither of which was the policy at issue here. (*See id.* Ex. 7 (containing a heading with the address of the NYSLRS, and instructions to "[m]ail [the] completed form" to NYSLRS); *id.* Ex. 8 (applying specifically to a "choice of insurance beneficiary(ies) under [a particular group policy] issued by MetLife and provided by the School Administrator's Association of New York State")).) Not surprisingly, then, neither of these forms could have complied with the policy's requirement that Matthew file "written notice *to us*," i.e. to Sun Life. Thus, Nonmovants have not identified a genuine dispute of material fact over whether "the method prescribed by the insurance contract [was] followed to effect a change of beneficiary." *McCarthy*, 704 N.E.2d at 560.

This does not end the inquiry, however, because where an insurer "has brought the proceeds of the policy into court and requested the court to adjudicate the rights of contesting claimants," the insurer "may no longer insist upon strict compliance with the policy provisions." *Id.* at 561; *see also Lincoln Life & Annuity Co. of N.Y. v. Caswell*, 813 N.Y.S.2d 385, 389 (App. Div. 2006) ("[E]xact compliance with the contractual procedure will be deemed waived where the insurer, faced with conflicting colorable claims to the same policy proceeds, pays the

15

proceeds into court in an interpleader action so that the opposing claimants may litigate the matter between themselves."). Instead, the Court "may apply the equitable doctrine of substantial compliance to carry out the insured's intent where the insured has not strictly complied with the policy terms prescribing how to change a beneficiary." *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007).

"Under New York law, the 'paramount factor' in determining whether application of the substantial-compliance doctrine is warranted is the insured's intent." *Id.* (quoting *McCarthy*, 704 N.E.2d at 560). In this context, Nonmovants must demonstrate Matthew's specific intent to change the beneficiaries of his Sun Life policy. *See Aetna Life Ins. Co. v. Sterling*, 224 N.Y.S.2d 146, 147 (App. Div. 1962) ("Speculation on [the insured's] general intent is neither profitable nor permissible."); *cf. McCarthy*, 704 N.E.2d at 561 (finding no change in beneficiary where a party failed to show "that it was the decedent's stated intention that his father receive the proceeds from the insurance policy"). Moreover, "[m]ere intent . . . on the part of the insured is not enough; there must be some affirmative act or acts [on the part of the insured] to accomplish the change" to the policy. *See McCarthy*, 704 N.E.2d at 560 (second alteration in original) (internal quotation marks omitted).

It is true, as the New York Court of Appeals has noted, that "the act or acts constituting substantial compliance may vary." *Id.* But it is also clear that, where the substantial-compliance doctrine operates equitably to "make[] an incomplete change of beneficiary effective against the original beneficiary," *Kamrath*, 475 F.3d at 924, courts have set a high bar for the affirmative acts that satisfy the specific-intent threshold and the allowable reasons for making an incomplete change. Thus, to communicate an intent to change the beneficiary of a policy, "New York require[s] the insured to do everything reasonably possible to change the beneficiary according

16

to the policy terms." *Id.* at 925.  Normally, this requires parties to demonstrate that "the insured's intent [was] thwarted by circumstances beyond his or her control." *William Penn Life Ins. Co. of N.Y. v. Viscuso*, 569 F. Supp. 2d 355, 366 (S.D.N.Y. 2008); *see also Conn. Gen. Life Ins. Co. v. Boni*, 368 N.Y.S.2d 1, 3 (App. Div. 1975) ("[E]xact compliance . . . will be excused where the attempt at such compliance has been substantial and its full success prevented by some cause not within the control of the person attempting to make the change." (internal quotation marks omitted)).  Such circumstances have included, for example, the insured dying while in the process of making the change, *see Metro. Life Ins. Co. v. Costello*, No. 01-CV-1751, 2002 WL 1751398, at *3 (E.D.N.Y. July 25, 2002) (finding genuine issue of fact as to insured's intent where he died with completed change-of-beneficiary forms in his briefcase, ready to be sent to the insurer); *Cable*, 453 N.Y.S.2d at 87 (where insurer notified insured of incomplete submission, the insured communicated his intent to complete the submission, and the insured then died in a car crash the following day, "the insured did all that was possible to effectuate the change of beneficiary except for sending his policy to be indorsed"); *see also William Penn Life Ins. Co. of N.Y. v. Coleman*, No. 026723/09, 2010 WL 3540078, at *2 (N.Y. Sup. Ct. Sept. 8, 2010) ("It has been held that where the insured executed a change of beneficiary, but died before it could be transmitted to the insurance company, the insured had completed all that was humanly possible for him to do because he was then on his deathbed."), and the insurer ceasing efforts to change a policy because the insurer (erroneously) communicated to the insured that the change was effectively made, *see Union Cent. Life Ins. Co. v. Berger*, No. 10-CV-8408, 2012 WL 4217795, at *9 (S.D.N.Y. Sept. 20, 2012) (finding that "[d]ecedent did all that was reasonably possible to show his intention that he wanted to change the beneficiary" after insurer erroneously "twice confirmed that the beneficiary change had been made").  By contrast, courts

17

will not find substantial compliance when the insured had an unimpeded opportunity to comply with the policy's procedures but failed to do so. *See, e.g.*, *Kamrath*, 475 F.3d at 925–26 (upholding district court's finding that the insured "did not do everything possible under the circumstances" where the insured "did not suffer from the sort of physical or mental illness that prevented the decedents in other cases from doing more," and he "had the opportunity to complete the beneficiary change").

Given this discussion of New York's substantial-compliance doctrine, Nonmovants' arguments allegedly demonstrating Matthew's intent are unavailing. First, Nonmovants argue that Matthew expressed a general intent to remove Movant as a beneficiary. Specifically, they allege that Movant initiated divorce proceedings against Matthew in September 2009, (*see* Opp. Decl. ¶ 14), that Matthew had Movant "removed from the marital residence pursuant to an Order of Protection" in August 2008, (*id.* ¶ 21), and that Movant "never returned to the marital home" after being removed, (*id.* ¶ 22). These facts are not material, however, because although they may "constitute some evidence of the insured's subjective intentions," these comments "plainly [were] not an attempt to comply with the . . . change-of-beneficiary procedure set forth in the . . . policy." *Caswell*, 813 N.Y.S.2d at 390; *see also Sterling*, 224 N.Y.S.2d at 147 (absent evidence of the insured's action on the specific insurance policy in question, "speculation on [the insured's] general intent is neither profitable nor permissible").

Second, Nonmovants argue that Matthew specifically intended that all of his life-insurance benefits should go to Domenic, including when Matthew told a co-worker that he "wanted all of his benefits to go to his son," (Opp. Decl. ¶ 39), and when Matthew stated, in an audio recording, that Domenic should be "the sole beneficiary" for "[a]ll of [his] life insurance,"

18

(*id.* ¶ 28 (internal quotation marks omitted)).[7]  Nonmovants contend that Matthew made the latter statements in what he understood "to be his last will and testament, in which he set forth his wishes for distribution of his property and how he would like his affairs [to be] arranged after his death."  (Opp. at 1.)

In this context, they argue that this case is similar to *United States v. Pahmer*, 238 F.2d 431 (2d Cir. 1956), where the Second Circuit found that a deceased's stated intent to change a beneficiary contained in a holographic will was sufficient to effect the change even though this procedure "did not fully comply with [the policy's] regulations."  *Id.* at 433.  In so holding, the Second Circuit recognized "that a change of beneficiary may be shown by proof of intent to make the change coupled with positive action on the part of the insured evidencing an exercise of the right to change the beneficiary," and it found that the statement in the will was such a positive action.  *Id.* at 433–34 (internal quotation marks omitted).  However, even while it held that a statement in a will was a sufficient indication of intent, the court still applied that holding to a statement of specific intent to change a specific life-insurance policy, a fact that is missing here.  *See id.* at 434 (holding that "the insured's 'will['] . . . required a finding that he intended to substitute his mother for his wife as the beneficiary of his insurance," and that "[t]here is no

_____

[7] These allegations appear to be based on hearsay evidence, which might not meet Nonmovants' burden to offer "*admissible* evidence sufficient to raise a genuine issue of fact for trial." *Jaramillo*, 536 F.3d at 145 (emphasis added); *see* Fed. R. Evidence 802 (declaring that hearsay evidence is generally inadmissible).  However, where Movant does not make this argument, and where the Court must "resolve all ambiguities and draw all reasonable inferences against the movant," *Dall. Aerospace, Inc.*, 352 F.3d at 780, the Court considers these allegations in its resolution of the Motion because this evidence might be admissible under Federal Rule of Evidence 807.  *See* Fed. R. Evid. 807 (providing that a hearsay statement is admissible if, *inter alia*, it has "equivalent circumstantial guarantees of trustworthiness" and "admitting it will best serve the purposes of these rules and the interests of justice").  To be clear, however, in considering this evidence based on the theoretical possibility that it might be admissible, the Court in no way holds that this evidence is, in fact, admissible.

evidence to show, and the parties do not suggest, that there was outstanding life insurance other than the policy . . . involved herein"). Moreover, Matthew's statement, on its face, did not reflect his final intent. (*See* Decl. of Paul J. Goldstein, Ex. B (transcription of oral will) at unnumbered 2 (Dkt. No. 30) ("This is just a first run. I'm going to listen to it, play it back. We'll see where we get from there.").) Finally, in *Pahmer*, where the Second Circuit analyzed "a National Life Insurance policy issued to a World War II veteran" and administered by the Veteran's Administration, 238 F.2d at 432, it did not specifically apply New York law—or any state's law, for that matter—but instead cited cases that exclusively addressed beneficiary changes to National Life Insurance policies, *id.* at 433 ("[I]n the field of National Life Insurance the cases are legion which hold that in judging of the efficacy of an attempted change of beneficiary the courts brush aside all legal technicalities in order to effectuate the manifest intention of the insured." (internal quotation marks omitted)). This makes *Pahmer* less persuasive here because the Court, in applying New York law, also must follow the New York Court of Appeals's more recent decision in *McCarthy v. Aetna Life Insurance Co.*, 704 N.E.2d 557 (N.Y. 1998), which explicitly rejected a party's attempt to demonstrate an intent to change a beneficiary in a will. *See id.* at 560 ("While the act or acts constituting substantial compliance may vary, they do not include general testamentary statements in a will." (internal citations omitted)).

Third, Nonmovants appear to allege, multiple times, that Matthew may not have known about his Sun Life policy, and thus he was thwarted from changing the beneficiary due to his lack of knowledge. (*See* Opp. at 7 ("The evidence shows that [Matthew] had no reason to know that a company named 'Sun Life' even issued his $100,000.00 life insurance policy."); *id.* at 8 ("It is unlikely that [Matthew] even knew that his life insurance policy was with Sun Life.").)

But this argument is based on pure speculation.  And, even if the Court accepted that Matthew

was unaware of his Sun Life policy, Nonmovants have not alleged that the insurance company

contributed to his lack of awareness in a way that would warrant a finding of substantial

compliance.  *Lamarche v. Metro. Life Ins. Co.*, 236 F. Supp. 2d 34, 48 (S.D.N.Y. 2002)

("Substantial compliance depends not only on the steps taken by the insured to comply with the

express terms of the contract, but also on any relevant conduct by the insurer that might impact

upon the insured's understanding of what is required under the circumstances.").  Finally, far

from presenting a material issue of fact, this allegation actually supports the Movant, because if

Matthew did not know about the policy—and, specifically, its change-of-beneficiary

procedures—then Nonmovants cannot demonstrate Matthew's specific intent to effect a

beneficiary change according to those procedures.  Therefore, because the Court "must construe

the facts in the light most favorable to the non-moving party," *Dall. Aerospace, Inc.*, 352 F.3d at

780, the Court will ignore Nonmovants' own construction of this fact and assume that Matthew

did know about the Sun Life policy and its change-of-beneficiary procedures.

Fourth, Nonmovants allege that Matthew's attempt to comply with the policy procedures

was thwarted by his employer (BOCES) when it failed to provide change-of-beneficiary forms

for the Sun Life policy:

> [Matthew] only fell short of accomplishing the change of beneficiary for the Sun
> Life policy by not using a specific form.
>
> . . . .  No specific form to change the Sun Life beneficiary was readily available to
> employees, and there was no specific form designated specifically for that purpose.
> . . . .
>
>  . . . .  [Matthew] had no information in his possession that a separate form even
> existed with which to effectuate a change to the Sun Life policy.  His full success in

21

compliance with Sun Life procedures was thwarted by causes not within [Matthew's]
control.

(*See* Opp. at 6–7.)  This allegation also fails to qualify as a material fact, however, because even
if it were true—which, the Court notes, it is not, (*see* Mot. Decl. ¶ 11 (alleging that Matthew
"was provided by Dutchess BOCES with an employee handbook explaining the . . . benefits to
which he was entitled as an employee"); Opp. Decl. ¶ 11 (admitting this allegation); Decl. of
Paul J. Goldstein, Ex. E at unnumbered 3 (photocopy of handbook outlining change-of-
beneficiary procedures for Sun Life policy))—it would not be enough to justify applying the
substantial-compliance doctrine.  Simply put, the policy did not require Matthew to use a
specific form, but it instead allowed Matthew to change the beneficiary merely "by written
notice to us signed by you."  (Decl. of Paul J. Goldstein, Ex. E.)  Thus, Matthew had an
opportunity to comply with the procedures by submitting any kind of written notice directed to
Sun Life, and BOCES did not thwart this opportunity by failing to provide a specific form.  *See
Barnum v. Cohen*, 644 N.Y.S.2d 828, 830 (App. Div. 1996) (finding that the insured "did not do
all that was possible to accomplish the change" of beneficiaries because "[h]e never mailed the
[change] form . . . and there [was] no evidence in the record that he was prevented from mailing
the form due to health problems or that he was unaware of the need to mail the form"); *Boni*, 368
N.Y.S.2d at 3 (finding that the insured did not do "all within his power to effect the change of
beneficiary" where the insured executed, but never submitted, an incomplete and unwitnessed
change-of-beneficiary form over ten years before he died); *cf. Kamrath*, 475 F.3d at 925–26
(finding no substantial compliance where insured "had the opportunity to complete the
beneficiary change").

Finally, Nonmovants allege that Matthew demonstrated an intent to change his Sun Life policy when he changed the beneficiaries of his other policies, specifically those run by the NYSLRS and the School Administrators Association.  As discussed, it is undisputed that on August 11, 2009, Matthew successfully changed the beneficiary of his NYSLRS death benefit from Movant to Nonmovants by signing, notarizing, and submitting a form entitled "Designation of Beneficiary with Contingent Beneficiaries to the [NYSLRS]."  (*See* Mot. Decl. ¶¶ 15–16; *id.* Ex. 7; Opp. Decl. ¶ 16.)  Furthermore, it is undisputed that on December 18, 2009, Matthew successfully changed the beneficiary of his School Administrators Association life-insurance policy from Movant to Nonmovants by executing a form entitled "Insurance Beneficiary Designation" and mailing it to the School Administrators Association.  (*See* Mot. Decl. ¶ 17; *id.* Ex. 8; Opp. Decl. ¶ 17.)  Nonmovants allege that

> [t]he signed forms changing [Matthew's] beneficiaries were acts designed to make the change on all life insurance policies . . . .
>
> . . . .  It is most likely that since he completed change of beneficiary forms for both the union and State of New York . . . that he certainly intended, and even thought, that he was changing the beneficiaries to all of his benefits, including the . . . Sun Life life insurance policy.

(Opp. at 7–8; *see also id.* at 6 ("[Matthew] was changing all of his beneficiaries from his soon to be ex-wife to his son, Domenic.  He successfully changed his retirement death benefits and another life insurance policy to name his son as beneficiary.  The only reasonable inference is that he, in fact, thought he was changing the $100,000.00 life insurance policy, issued by Sun Life, as well.").)  But these allegations also fail to establish a dispute of material fact.  At best, they demonstrate Matthew's general intent to change all of his life insurance policies.  But even taken in that light, they fail to demonstrate Matthew's specific intent to change the Sun Life

policy.  In a way, the allegations actually appear to be self-refuting, because Nonmovants' claim that Matthew thought he was changing all of his life-insurance policies when he submitted the NYSLRS form in August 2009 is belied by their claim that he subsequently submitted a form changing his School Administrators Association life-insurance policy four months later.  In any event, Nonmovants' allegation of Matthew's intent to change the beneficiaries "to all of his benefits" is not material to whether he substantially complied with the Sun Life policy.  *See McCarthy*, 704 N.E.2d at 559, 561 (finding no substantial compliance where decedent willed "all . . . insurance benefits" to his father but there was no evidence that he "made any attempt to change the beneficiary designation" in his life-insurance policy and there was no evidence "that decedent was physically or mentally incapable of attempting to substantially comply with the requirements of the policy").

In light of the foregoing, Nonmovants have failed to identify a genuine dispute of material fact as to whether Matthew actually or substantially complied with the change-of-beneficiary procedures of his Sun Life policy.  The Court thus finds that Movant remained the primary beneficiary of the Sun Life policy.  *See Liberty Life Assurance Co. of Bos. v. Bahan*, 441 F. App'x 21, 24 (2d Cir. 2011) (affirming summary judgment in interpleader action upon finding that an attempt to change a life-insurance-policy beneficiary was ineffective); *Prudential Ins. Co. of Am. v. Rowson*, No. 93-CV-7738, 1994 WL 455536, at *3 (S.D.N.Y. Aug. 19, 1994) (granting summary judgment in interpleader action upon finding that an attempt to change a life-insurance-policy beneficiary was ineffective); *cf. AMEX Assurance Co. v. Caripides*, 179 F. Supp. 2d 309, 317 (S.D.N.Y. 2002) ("Since the determination of proper beneficiaries under the policies is purely a question of law, summary judgment is an appropriate device." (internal quotation marks omitted)).

### III.  Conclusion

For the foregoing reasons, the Court grants in full Claimant Kathleen Colavito's Motion

for Summary Judgment.  The Clerk of the Court is respectfully directed to terminate the pending

motion.  (Dkt. No. 24.)  The Clerk of the Court is further directed to enter judgment for Kathleen

Colavito and to close the case captioned *Sun Life & Health Insurance Company (U.S.) v.*

*Kathleen Colavito et al.*, No. 11-CV-5225.

SO ORDERED.

DATED:      White Plains, New York
            March 28 , 2014

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

25